## Walter S. Kemeys and Gerrit S. Miller, Executors, etc., et al., v. Charles Netterstrom et al.

1. CROSS-BILL—*Dismissed for Want of Equity.*—Where the circumstances of a transaction, as alleged in a cross-bill, disclose no equity, the cross-bill should be dismissed.

**Foreclosure Proceedings.**—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Reversed and remanded with directions. Opinion filed January 16, 1900.

BAYLEY & WEBSTER, attorneys for appellants.

CHYTRAUS & DENEEN, attorneys for appellees; CHARLES H. HAMILL, of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court.

Appellants' testator filed his bill to foreclose three trust deeds given by William Kinsella to Edwin F. Bayley, trustee, to secure his, Kinsella's, promissory notes aggregating the principal sum of seventy-five hundred dollars, for money loaned.

The appellees, Netterstrom and Vider, were, with others, made parties defendant, and they answered denying the material allegations of the bill, but setting up no affirmative rights. Some time afterward, they were given leave to file a cross-bill. The purpose of the cross-bill was to foreclose a deed absolute upon its face, but in reality intended as security, made by the said Kinsella to one Lindsten, which in effect constituted a second mortgage upon the same premises covered by the prior trust deeds to Bayley, and to establish an equitable lien prior to and as against the Bayley trust deeds, to the extent of $1,345.72, alleged to have been paid by cross-complainants for certain outstanding certificates of a tax sale of the property, made subsequent to the making of the Bayley trust deeds, but before the making of the deed to Lindsten.

The master to whom the cause was referred reported adversely to the cross-complainants in respect of their claim of priority over the Bayley trust deeds for the amount, or any part of it, paid by them for the tax certificates, and recommended that the court deny the prayer of the cross-bill in such respect. The Circuit Court, however, sustained exceptions to the master's report, and gave the decree appealed from, according to the prayer of the cross-bill.

The questions raised here relate wholly to the propriety of the decree in so far as it gives a priority of lien to the cross-complainants for the amount paid for the tax certificates.

The tax certificates were originally held by one Johnson, who had previously agreed with Bayley, who was not only the trustee named in the trust deeds, but was also the agent of the loan owner, not to part with them to any third party without Bayley's consent. The cross-complainants, Netterstrom and Vider, came to be concerned in Kinsella's affairs in this regard, because of a joint judgment for some $6,800 having been recovered against them and him in the United States court, which, as between themselves, he ought to pay one-third of.

They, Netterstrom and Vider, seem to have been able to pay their share of that judgment, but he, Kinsella, was unable to pay his part.

After considerable negotiation it was substantially arranged that Netterstrom and Vider should lend to Kinsella an amount about equal to his share of that judgment, and take as their security his equity in the real estate covered by the Bayley trust deeds, and some other of his real estate. There was also a junior judgment for $4,000 against Kinsella alone, in the United States Court, which under the proposed arrangement was to be cut out by a sale under the prior joint judgment, if possible.

At first it was contemplated that the amount Netterstrom and Vider would be required to loan to Kinsella would be in the neighborhood of $2,000, but it was soon ascertained that these tax certificates must be procured, in order that

they should not constitute a lien prior to the conveyance that Kinsella should make of his equity in the land, and thereupon $4,000 was the sum agreed upon to be advanced by Netterstrom and Vider.

Johnson, the holder of the tax certificates, was willing, as he could not help being, that the tax sales should be redeemed from, but he was not willing, nor at liberty under his agreement with Bayley, to sell the certificates to anybody but Bayley or his principals without Bayley's consent. It therefore became incumbent upon Kinsella's attorney, Mr. Anderson, who was also acting for Netterstrom and Vider, with Kinsella's approval, to procure Bayley's consent that Johnson might sell the certificates. For some reason, not very plain, it was thought that acquiring the tax certificates would in some way lend additional security to Netterstrom and Vider—perhaps in some eventuality as against the junior judgment against Kinsella alone— although it is plain it was never intended until after this litigation was begun that they should be used adversely to the Bayley trust deeds.

Mr. Anderson so expressly testifies, and says he was to hold them as a shield to both Netterstrom and Vider and, the interests represented by Bayley, so that neither one should procure tax deeds adverse to the others.

Bayley had been pressing Kinsella to redeem from these tax sales, and the trust deeds provided such to be Kinsella's duty. Anderson had been trying for weeks to get somebody to lend Kinsella money with which to get rid of the certificates, and seems to have had reasonable expectations of succeeding without the aid of Netterstrom and Vider, and, after his negotiations with the latter were in progress, he wrote the following letter to Bayley, who was then absent from Chicago:

"Chicago, March 25, 1895.

Mr. Edwin F. Bayley, Waupun, Wis.:

My Dear Sir—I write you in regard to the Kinsella matter, of which I spoke to you some weeks ago. We had found a friend of Mr. Kinsella who had promised to loan

Kemeys v. Netterstrom.

him a sufficient sum to take up the tax certificates and the judgment, of which I spoke to you, and the papers and arrangements had all been completed, when to our very great disappointment, on Saturday last he backed out because he had made up his mind to go to Europe and didn't want to leave a matter of that kind open.

This morning I got a client of mine, who is also a friend of Mr. Kinsella's, to agree to advance the money, but he can not advance it all until we complete our arrangements about selling the property under the judgment of which I spoke to you, but he will advance a sufficient sum to take up the tax certificates, but he desires to hold them until the other arrangements are made. When that is done the certificates will be canceled. There is no doubt he is acting in the utmost good faith, and Mr. Kinsella is perfectly satisfied with the arrangement, and we were going to complete it to-day, and would have done so, except that Mr. Wm. M. Johnson, who holds the tax certificates, and somewhat in your interest, did not want to sell them to us without your consent. Mr. Waldo knew nothing of the matter, and did not care to interfere, but Mr. Johnson agreed that the additional penalty of twenty-five per cent, which will be added the day after to-morrow in the regular course of the suit, would not be added until next Monday, so that we should have time to communicate with you. I desire to assure you that as soon as the other arrangements are made, and I have not the slightest doubt that they will be made, the certificates will be canceled. The title is perfectly good enough without the aid of those certificates or a deed thereunder.

Will you please send a brief note to Mr. Johnson informing him that you have no objection to me holding the tax sale certificates, as it is arranged that I shall hold them until the other arrangements are made. Otherwise it will not be possible for Mr. Kinsella to raise this money.

Yours very truly,

H. M. Anderson."

Mr. Netterstrom testified that his and Kinsella's negotiations for taking up the tax certificates and the judgment, began three or four weeks before April 1st, which includes the date of the above letter. Mr. Bayley does not appear to have replied in writing to Mr. Anderson's letter, but, soon after his return to town, Anderson and he had con-

versations upon the subject, and, under date of April 1st, the following letter was written by Anderson to him:

                             "Chicago, April 1, 1895.

Mr. Edwin F. Bayley:

    Dear Sir—I hold tax certificates for the tax sale of 1893, purchased by a client of mine from William H. Johnson, for the sum of $1,345.72, to the following described property." (Describing the premises.) "For valuable considerations moved from you to me, for the benefit of my said clients, I hereby agree that if said certificates of sale shall not be canceled of record on or before July 1, 1895, to sell the same to you or any person upon your order for the amount above paid to Mr. Johnson, with interest thereon at the rate of six per cent per annum, from this date until the time of such sale to you or order.

    I further agree that this option to you or your order to purchase said tax certificates may remain open for sixty (60) days next after the said 1st day of July, 1895.

                             H. H. Anderson."

At the time of the writing and delivery of this last letter to Bayley, the tax certificates were not in fact held by Anderson, but the writing was made at Bayley's dictation, as a condition to the giving of his consent to the sale of the certificates by Johnson, and upon its delivery to Bayley he gave the desired consent.

The details being arranged, Netterstrom and Vider procured their note for $4,000, to be discounted at a Chicago bank, on April 8, 1895, and the entire proceeds were given to Anderson in two checks, one for the sum to be paid to Johnson for the tax certificates, and the other for the balance. With the money so in hand, Anderson took up and obtained the tax certificates from Johnson and procured the joint judgment to be assigned to Lindsten. On the same day Lindsten, to whom Kinsella, in furtherance of the plan, had, by deed dated a few days earlier, conveyed his real estate, executed a declaration of trust setting forth that he held the title to the premises by virtue of said deed, and " by an execution sale by the United States marshal hereafter to be made," in the case of the joint judgment, " if I shall be purchaser at said sale," and specifying the trust as being in reference to the payment by or for Kinsella of

$4,000, with interest and expenses of the trust, on or before October 8, 1896, etc.   The $4,000 specified in the declaration of trust to be paid by Kinsella was the same as that represented by the note of Netterstrom and Vider, although not particularly mentioned as such.

Although of not much materiality in this connection, it may be added that shortly after the joint judgment was assigned to Lindsten, a sale of all the premises previously conveyed to Lindsten by Kinsella was had under an execution issued upon the judgment, and the premises bought in by Lindsten, and he ultimately obtained a marshal's deed for the premises, thus accomplishing the desired result of cutting out the junior judgment which stood against Kinsella alone.

The difficulty in the case is not so much about the facts, concerning which there is but little controversy, but as to the rights of the parties under them.

Netterstrom and Vider contend they are entitled to an equitable lien against the premises to the extent paid for the certificates prior to the lien of the trust deeds, and such was the decree of the Circuit Court.

Anderson kept the tax certificates from the time he bought them for his clients until some time in the summer of 1895, when upon the demand of a clerk in the employ of Bayley's firm that they be either canceled or surrendered, he surrendered them to the clerk, and they have been kept under Bayley's control ever since.

The certificates were issued September 27 and 28, 1893, and they were surrendered to Bayley not long before two years thereafter would expire.

We do not regard the circumstances of Anderson surrendering the certificates to Bayley and of Bayley in keeping them, as possessing any controlling weight in the matter. Neither Anderson nor Bayley could equitably have acquired a tax title under them adverse to the interests of the other.   It is unquestioned that no notices as required by law, had been served in order to entitle anybody to take out tax deeds under the certificates, and that the fact was as Ander-

son believed it to be when he gave them up to Bayley, they possessed no value for tax title purposes except possibly in view of a subsequent tax sale of the property within the two years from the date of the sale for which they were issued; that two years had not then elapsed, and nobody could foresee that such subsequent tax sale would occur. It was not the duty of Bayley, or his principal, to prevent such sale by payment of the taxes, but still remained the duty of Kinsella or Lindsten, or of Netterstrom and Vider, for whose benefit Lindsten held the title in trust, to do so. Neither Kinsella, Lindsten or Netterstrom had any right to acquire a tax title through a subsequent tax sale adverse to the Bayley trust deeds. And no more could they or either of them, through any manipulation of the tax certificates in question, after their purchase of them under the circumstances detailed, acquire a tax title against Bayley which could be sustained in equity. Every purpose for which the certificates were taken up and held by Anderson had been served, and they might well be allowed to expire. Bayley, it is true, had his option under the letter of April 1st, to take up the certificates from Anderson by paying the amount Netterstrom and Vider, or Kinsella, had paid Johnson for them, but he was not bound to do so. He might, as he did, permit them to remain in Anderson's hands and exhaust their force and vitality by lapse of time.

After that had happened, it was, as appears from the evidence, a mere question of whether Bayley or Anderson should pay the cost of canceling the certificates, and as Anderson did not want to do so he gave them up to Bayley, in whose hands they have since remained inoperative.

· But though the certificates did cease to have value, Netterstrom and Vider would not necessarily, on that account alone, be deprived of an equitable lien on the premises prior to the Bayley trust deeds if the equities of the case entitled them to it.

The circumstances, however, of the transaction do not disclose any such equity.

Every earmark of the transaction discloses nothing more

nor less than a loan by Netterstrom and Vider to Kinsella. The latter was under obligations to Netterstrom and Vider to pay his part, as between themselves, of the joint judgment, and he was obligated to Bayley's principals to clear away these outstanding certificates. It was thought that security to Netterstrom and Vider could not be given by Kinsella for money they might advance for the payment of the judgment, unless sufficient money was also furnished to buy the certificates. Money for both purposes was raised. Kinsella paid the interest on the money borrowed, and on one occasion joined Netterstrom and Vider in making a renewal note to the bank for the money borrowed. In equity the transaction was Kinsella's, and Netterstrom and Vider have no more claim to an equitable lien ahead of Bayley than Kinsella has, and he, of course, has none.

The decree of the Circuit Court must be reversed, and the cause remanded to that court with directions to deny the prayer of the cross-bill, in so far as it asks a priority of lien over the Bayley trust deeds in any respect, and to enter a decree in favor of the appellants, in accordance with the prayer of their bill, as recommended by the master. Reversed and remanded with directions.